UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOHN R. HAAS,
    Plaintiff,

v.                                                          Case No. 05-C-785

CITY OF MILWAUKEE, ARTHUR JONES,
NANNETTE HEGERTY, LARRY SCHIMKE,
KENNETH MURRAY, JOHN GARCIA,
and JOHN DOES,
    Defendants,

## ORDER

Plaintiff John R. Haas, who is currently incarcerated at Fox Lake Correctional Institution, brought this action under 42 U.S.C. §§ 1983 and 1985, alleging that the defendants violated his constitutional rights by using excessive force during an arrest and failing to provide adequate medical attention. This action was commenced on June 8, 2005 in state court, and on July 21, 2005, the case was removed to federal court. Plaintiff has paid the filing fee.

Regardless of plaintiff's fee status, the court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325

(1989); Hutchinson ex rel. Baker v. Spink, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

To state a claim for relief under 42 U.S.C. § 1983, plaintiffs must allege: 1) that they were deprived of a right secured by the Constitution or laws of the United States, and 2) that the deprivation was visited upon them by a person acting under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's pro se allegations, however inartfully pleaded, a liberal construction. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

Plaintiff alleges that on March 9, 2002, defendants Officer John Garcia and Officer Kenneth Murray stopped him for an investigatory or "Terry" stop. (Compl. at 2 ¶ 1.) Officers Garcia and Murray removed the items from plaintiff's pockets including his prescribed heart

2

medication, "nitro". (Id.) Upon questioning, plaintiff explained to the officers what the medication was and also that he was experiencing chest pains and desperately needed to take a nitro pill. Defendants Garcia and Murray did not allow plaintiff to take any medication, told plaintiff to calm down, and refused his requests for medical assistance.

Plaintiff was placed in defendant Murray's squad car and taken to 749 West Virginia Street, where he "went unconscious" twice and where defendant Murray threatened him with bodily harm. (Compl. at 2 ¶ 2.) Plaintiff informed defendant Murray that he feared dying from a heart attack.

Next, plaintiff was transported to the Second District Police Station. During the drive there, plaintiff went in and out of consciousness and was disoriented. Once at the station, plaintiff again begged Murray for medical help and a nitro pill but he was again refused. Eventually, a "black male officer" booked plaintiff at the Second District. (Compl. at 3 ¶ 5.)

Later that day, defendant Detective Larry Schimke interrogated plaintiff at the Second District. Before questioning started, plaintiff informed defendant Schimke "that he had a bad heart, was having a heart attack, that his nitro was in his property and that he needed paramedics, nitro and to go to a hospital, that he feared from his condition [sic]." (Compl. at 3 ¶ 6.) Defendant Schimke "informed Haas that he couldn't give Haas his nitro because it could maybe kill him, that he couldn't believe what the label said it is, that by law, he didn't even have to charge Haas with anything, that he could put Haas in a holding cell at 2nd District for 72 hours." (Id.) Defendant Schimke told plaintiff that Schimke was plaintiff's only hope for medical help because the Second District police would not do anything and that if plaintiff "cooperated, waive[d] the right to remain silent and to have any attorney present

3

during questioning, Det. Schimke promised to call paramedics." (Id.) Plaintiff eventually accepted this deal.

Once the investigation started, plaintiff explained to defendant Schimke his version of the events. The interrogation was recorded and plaintiff stated several times that he needed medical assistance. At one point, defendant Schimke got angry at plaintiff and yelled that they had plaintiff on tape committing the crime. "While Det. Schimke was screaming this, he swung his arm back that held the VCR-tape, then swung his arm like he was going to hit me, paused about a foot away, then continued his swing and hit me in the head, knocking me out of the chair and knocking the chair over." (Compl. at 5 ¶ 6.) At this point, plaintiff screamed to Schmike, "I'am [sic] done talking to you, I want an attorney, phone call, paramedics and my nitro back, I've got a full blown heart attack and need to go to the hospital." (Id.) Defendant Schimke responded that "I'll get a confession out of you or I'll take you to the morgue." (Id.) Plaintiff refused to answer any more questions and then he lost consciousness.

Plaintiff was kept in a holding cell at the Second District until the following day, March 10, 2002. During that time, he yelled to officers that he was having a heart attack and that he needed to go to the hospital.

On the afternoon of March 10, 2002, a Milwaukee Police Department van transported plaintiff from the Second District police station to the Milwaukee County Jail. When they arrived at the jail, "the nurse immediately started yelling get him out of here, we're not taking him, what's wrong with you people, etc." (Compl. at 6. ¶ 8.) The nurse at the jail refused to take custody of plaintiff and told the police that they should take him to the hospital.

4

> The nurse asked me, what's wrong with me, I explain that I had a heart attack, when I was arrested and I have chest pains now and the Police have my nitro and I need paramedics or to go to a hospital, that I have a bad heart. The Milwaukee Police then unhandcuffed me and placed me on a wooden bench next to the nurse station, here I looked at my finger nails, they were a reddish or purple color, there were other people across from me handcuffed, they were saying things like look at that fag white boy grey and blue color face and they thought I had lipstick on, my lips were bluish-purple.

(Id.)

Plaintiff was then taken to the emergency room at the Aurora Sinai Medical Center where he underwent heart surgery. During plaintiff's recovery from surgery, he was handcuffed to the bed and at one point, a "black male Police Officer," the same officer who booked him at the Second District, physically assaulted plaintiff. (Compl. at 6-7 ¶ 9.)

Plaintiff alleges that he was injured due to "reckless selection, hiring, and retention of Milwaukee Polic[e] Department employees" and "reckless police supervision and directions to provide an effective systems to evaluate, control, and monitor police employees." (Compl. at 8.) In addition, he asserts that the police chief "persistently failed to control subordinates in the face of knowledge of their propensity for improper actions." (Id.) Plaintiff seeks injunctive relief as well as compensatory and punitive damages.

Plaintiff claims that defendants Garcia, Murray, Schimke, and an unidentified black police officer denied him medical care. It is well-established that a pretrial detainee must be afforded certain protections under the Fourteenth Amendment, including access to adequate medical care. Jackson v. Ill. Medi-Car, Inc., 300 F.3d 760, 764 (7th Cir. 2002) (citations omitted). Due process rights are at least as great as the protections afforded a convicted prisoner under the Eighth Amendment. Id. Accordingly, when considering a

pretrial detainee's claim of inadequate medical care, the analogous standards under the Eighth Amendment are often used. Id.

To establish liability under the Eighth Amendment, a prisoner must show: (1) that his medical need was objectively serious; and (2) that the official acted with deliberate indifference to the prisoner's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001); see also Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); Zentmyer v. Kendall County, Ill., 220 F.3d 805, 810 (7th Cir. 2000).

Plaintiff also claims that defendants Schimke and the same unidentified black police officer used excessive force against him. Deliberate indifference is the applicable standard in § 1983 cases alleging excessive force by officials against pretrial detainees. Proffitt v. Ridgway, 279 F.3d 503, 506 (7th Cir. 2002). Deliberate indifference implies that the defendant knew there was a substantial risk of serious harm to the plaintiff. Farmer, 511 U.S. at 827; Weiss v. Cooley, 230 F.3d 1027, 1032 (7th Cir. 2000).

The court finds that the plaintiff has alleged sufficient facts to support a claim that his constitutional rights were violated. Specifically, plaintiff may proceed on deliberate indifference to a serious medical need and excessive force claims.

All of the defendants have been served, except for Officer John Garcia. The United States Marshal will be directed to serve Garcia. See infra, at 9-10. In addition, plaintiff will need to use discovery to identify the John Doe police officer defendant.

### ADDITIONAL MATTERS

Several motions are pending. First, on September 7, 2005, plaintiff filed Motion to Compel Defendant John Garcia's Address. According to plaintiff, Garcia had been retired

6

for over a year, cannot be found in Milwaukee County, and therefore an address is needed so that the summons and complaint may be served. Defendants argue that plaintiff's motion must be denied because he has not had any communication with defendants on the issue, in violation of Civil L.R. 37.1 (E.D. Wis.).

Second, on October 17, 2005, plaintiff filed Motion to Compel Defendants for the Production of Documents. Plaintiff requests that defendants produce the requested documents as it has been over thirty days since he made the discovery request. Defendants respond that plaintiff's motion should be denied because, 1) he did not engage in any personal consultation prior to bringing his motion; and 2) defendants' responses to plaintiff's first set of requests for production of documents were mailed to him on November 1, 2005. As such, defendants argue that the pending motion is moot since defendants have complied with the pending set of discovery demands.

Third, on November 16, 2005, plaintiff filed Motion to Amend Complaint in This Civil Action to Include Civil Rights Attorney's Fees Act of 1976 – 42 U.S.C.A. Sec. 1988. The title of plaintiff's motion explains the motion. He did not include a proposed amended complaint along with the motion. According to defendants, the law precludes any claim by a pro se litigant for attorney's fees under 42 U.S.C. § 1988. See Smith v. DeBartoli, 769 F.2d 451, 453 (7th Cir. 1985). Subsequently, on December 7, 2005, plaintiff clarified that his motion to amend the complaint to include attorney's fees would be for a private attorney representing him in this case.

Fourth, on November 16, 2005, plaintiff filed Motion for the Production of Documents Requested in Order for the Trust Finding Process of Fair Trial. He requests that the court compel defendants to produce discovery requested to ensure a fair trial. Plaintiff objects to

7

defendants' responses to his discovery requests. However, plaintiff does not indicate which specific discovery requests he seeks to compel responses to. Moreover, plaintiff has again not indicated that he engaged in a personal consultation with defendants prior to seeking intervention by the court.

Fifth, on March 27, 2006, plaintiff filed a letter requesting that the United States Marshal serve defendant John Garcia at his last known work address. A summons and copy of the complaint are attached to plaintiff's letter. In addition, plaintiff submitted documentation showing that he was indigent in June 2005, although he did pay the $250 filing fee in this case.

Plaintiff's first, second, and fourth motions are to compel discovery. Although Fed. R. Civ P. 37 permits the court to compel discovery, the party seeking such discovery must complete several steps before court intervention is appropriate. The party seeking discovery must first direct his request to the opposing party. If the opposing party fails to provide the materials, the party must then personally consult with the opposing party and attempt to resolve their differences. Civ. L.R. 37.1 (E.D. Wis.). If the party is still unable to obtain discovery, he may file a motion to compel discovery with the court pursuant to Fed. R. Civ. P. 37(a). Such motion must be accompanied by a written statement that the parties were unable to resolve their differences after personal consultation and a statement of the "date and time of such conference and the names of all parties participating in it." Id.

The motions before the court appear to be plaintiff's initial requests for discovery. As he has not indicated that he made any such prior demand of the defendants or engaged in the required personal consultation, court action would be premature and therefore, his

8

motions to compel discovery will be denied. Plaintiff is advised that since he is incarcerated, a "personal consultation" to satisfy this rule may be conducted via the mail.

Plaintiff's third motion is to amend the complaint. Rule 15(a) of the Federal Rules of Civil Procedure states that leave to file an amended complaint "shall be freely given when justice so requires." The Supreme Court has explained the meaning of "freely given" as used in Rule 15(a) by stating:

> In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of a movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. - the leave sought should, as the rules require be freely given.

Foman v. Davis, 371 U.S. 178, 182 (1962).

Since plaintiff does not have an attorney, it would be futile to amend the complaint to request attorney's fees. Moreover, plaintiff did not include a proposed amended complaint along with his motion, as required by Civil L.R. 15.1 (E.D. Wis.).[1] Therefore, his motion to amend the complaint will be denied.

---

[1] Civil L.R. 15.1, Motions to Amend Pleadings, provides:

> A motion to amend a pleading must specifically state in the motion what changes are sought by the proposed amendments. Any party submitting a motion to amend must attach to the motion the original of the proposed amended pleading. Any amendment to a pleading, whether filed as a matter of course or upon motion to amend, must reproduce the entire pleading as amended, and may not incorporate any prior pleading by reference. If the motion to amend is granted, the clerk must then detach the amended pleading and file it when the order granting the motion to amend is filed.

9

Finally, plaintiff requests that the United States Marshal serve defendant John Garcia. Rule 4(c)(2) of the Federal Rules of Civil Procedure provides that "[a]t the request of the plaintiff . . . the court may direct that service be effected by a United States marshal, deputy United States marshal, or other person or officer specially appointed by the court for that purpose." The record reveals that plaintiff has diligently attempted to serve Garcia on his own; however he has been unsuccessful. Therefore, upon due consideration, plaintiff's request for assistance will be granted. The United States Marshals Service will be directed to effect service of the summons and complaint in this action on defendant Officer John Garcia.

## CONCLUSION

**For the foregoing reasons,**

**IT IS THEREFORE ORDERED** that the United States Marshal shall serve defendant John Garcia pursuant to Federal Rule of Civil Procedure 4.

**IT IS FURTHER ORDERED** that plaintiff's motion to compel (Docket #10) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to compel (Docket #12) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to amend/correct complaint (Docket #16) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to produce (Docket #17) is **DENIED**.

Plaintiff is hereby notified that he is required to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Fed. R. Civ. P. 5(a). Plaintiff should also retain a personal copy of each document. If plaintiff does not

have access to a photocopy machine, plaintiff may send out identical handwritten or typed copies of any documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s).

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk's Office of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 17 day of April, 2006.

/s_____
LYNN ADELMAN
District Judge