# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JOHN HAAS,**
        **Plaintiff,**

    v.                                                           Case No. 05C0785

**LARRY SCHIMKE, KENNETH MURRAY,**
**JOHN GARCIA, and TOMMY L. WILSON SR.,**[1]
        **Defendants.**

## DECISION AND ORDER

Plaintiff John Haas brings this § 1983 action against City of Milwaukee police officers Larry Schimke, Kenneth Murray, John Garcia and Tommy L. Wilson Sr., alleging that defendants violated several of his constitutional rights. Before me now is defendants' motion for partial summary judgment.

## I. BACKGROUND

At around 3:15 p.m. on March 9, 2002, a security guard, Alina Hardy, noticed a man use wire cutters to snip wires on a building's alarm box. She called the police, then saw the man disappear behind the building and re-emerge with a black bag. Defendants Garcia and Murray responded to Hardy's call, and when they arrived, Hardy pointed to a man walking on West Virginia Street. Murray detained plaintiff, and he and Garcia conducted a "show up," which involved them having Hardy look at plaintiff for the purpose

---

[1]Plaintiff also named the City of Milwaukee as a defendant, but he now agrees that he has no claim against the City. Therefore, I will dismiss the City as a defendant and amend the caption accordingly.

of determining whether he was the individual she saw snipping the wire. Hardy identified plaintiff as that individual.

Murray then searched plaintiff and found a vial containing medication, which he gave to Garcia. Plaintiff states that he then told the officers that he had a bad heart, was suffering chest pains, that the vial contained nitroglycerin which was his heart medication, that he needed it and that he asked them to take him to the hospital, but that they refused his requests. Murray and Garcia admit that plaintiff told them that the medicine was nitroglycerin for his heart but deny that plaintiff told them anything more.

At about 4:15 p.m., defendant Schimke arrived, reviewed the scene and spoke to Hardy, Murray and Garcia.

At about 5:15 p.m., the officers took plaintiff to the police station where defendant Wilson booked him for burglary. Plaintiff states that he told Wilson that he was having chest pains and needed medical attention. He states that he tried to reach his nitroglycerin but that Wilson stopped him. Wilson denies these allegations. Wilson completed a form concerning plaintiff's medical condition indicating that plaintiff had no pressing medical needs, which plaintiff signed.

From about 6:00 p.m. to 8:00 p.m., defendant Schimke questioned plaintiff. Plaintiff states that he told Schimke about his heart condition and that he was having a heart attack and needed to go to the hospital. He states that Schimke told him that he would receive medical help only if he answered Schimke's questions and that Schimke struck him with a videocassette and knocked him off his chair. Schimke denies plaintiff's assertions. Plaintiff signed a form waiving his Miranda rights and made some incriminating statements.

At about 2:45 a.m. on March 10, 2002, police took plaintiff to the Milwaukee County Jail. The jail nurse noted that plaintiff complained of chest pains and ordered the officers to take him to the hospital, which they did. Hospital medical personnel also noted that plaintiff reported chest pains. At about 2:00 p.m. on March 10, a cardiologist admitted plaintiff to the hospital and on March 12 performed an angioplasty and stenting procedure. During the procedure, plaintiff suffered a mild heart attack. On March 15, the hospital discharged plaintiff, and the police took him back to the jail.

Prior to trial, plaintiff moved to suppress Hardy's show-up identification and any subsequent in-court identification. The trial court denied the motion. Plaintiff also moved to suppress the statements that he made, but the trial court also denied this motion. Plaintiff also asked the State to produce the clothing he was wearing when he was arrested and surveillance tapes of his pre-arrest activity. The state failed to produce the clothing because Milwaukee County employees had destroyed it. The State also failed to produce the surveillance tapes. Plaintiff was convicted of burglary, but the state court of appeals reversed the conviction, holding that the show-up identification was unnecessary and should have been suppressed and that plaintiff's clothing had exculpatory value and should have been produced.

I will state additional facts in the course of the opinion.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In assessing a summary judgment motion, I take all facts and all reasonable

3

Case 2:05-cv-00785-LA    Filed 07/13/10    Page 3 of 12    Document 144

inferences therefrom in favor of the non-moving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

### III. DISCUSSION

Plaintiff asserts several claims. First, he alleges that Schimke used excessive force against him in violation of the Fourth Amendment by striking him with a videocassette and knocking him off his chair. Schimke denies plaintiff's allegations but concedes that they present a question of fact that cannot be resolved on summary judgment.

Second, plaintiff alleges that each defendant violated his Fourteenth Amendment right to due process by failing to provide him with adequate medical care. The due process clause provides a pre-trial detainee who is in need of medical care rights analogous to those that the Eighth Amendment affords a prisoner. <u>Jackson v. Ill. Medi-Care, Inc.</u>, 300 F.3d 760, 764 (7th Cir. 2002). Thus, to establish a due process violation, a pre-trial detainee must show that (1) he had an objectively serious medical need; and (2) the defendant acted with deliberate indifference to his health or safety. <u>Thomas v. Cook County Sheriff's Dep't</u>, 604 F.3d 293, 301 (7th Cir. 2010). An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." <u>Id.</u> An official acts with deliberate indifference when he has subjective knowledge of the risk to the inmate's health yet disregards that risk. <u>Id.</u>

In the present case, a reasonable jury could conclude that plaintiff suffered from an objectively serious medical condition, severe heart disease, both before and after his arrest. Prior to his arrest, plaintiff was taking heart medication, and twelve hours after the arrest, a jail nurse found evidence of a serious heart problem and directed that plaintiff be

4

sent to a hospital. And the hospital staff found plaintiff's condition serious enough to require surgery, during which he suffered a heart attack.

I also conclude that a reasonable jury could find that each defendant acted with deliberate indifference to plaintiff's medical needs. With respect to defendants Murray and Garcia, plaintiff states that he advised them that he had had a prior heart attack, that he was suffering chest pains and having another heart attack and that he needed his heart medication, nitroglycerin. Plaintiff also states that he asked them to take him to a hospital, where his prescription for nitroglycerine could be verified. Defendants deny that plaintiff said most of these things. However, taking plaintiff's statements as true, as I must for purposes of this motion, a reasonable jury could find that Murray and Garcia acted with deliberate indifference to plaintiff's health by failing to take any steps whatsoever to determine whether plaintiff's complaints of pain required medical attention.

With respect to defendant Wilson, plaintiff alleges that when he tried to retain his nitroglycerin from the property table, Wilson stopped him. Plaintiff further states that he told Wilson that he was having a heart attack, needed his medication and needed to go to the hospital, and that Wilson told him to "shut up" and threatened to put him in a holding cell. A reasonable jury could find plaintiff's allegations relating to Wilson credible and conclude that Wilson also acted with deliberate indifference to plaintiff's health by ignoring his medical complaints.

With respect to defendant Schimke, plaintiff states that he told him that he had a bad heart, was having a heart attack, feared imminent death, needed his nitroglycerin and needed to go to a hospital. Plaintiff further states that Schimke refused to give him his medication, saying that he did not trust the label on the drug vial. Plaintiff also states that

5

Schimke told him that his only chance for medical help would be to waive his Miranda rights and answer Schimke's questions. Once again, if a jury believed plaintiff's allegations, it could find that Schimke acted with deliberate indifference to plaintiff's health.

Murray, Garcia, Wilson and Schimke all contend that even if they acted with deliberate indifference, their actions did not cause plaintiff any harm because the angioplasty, stenting and mild heart attack resulted from plaintiff's preexisting heart condition rather than the delay in treatment. However, plaintiff's cardiologist opines to a reasonable degree of medical certainty that the officer's actions in denying plaintiff nitroglycerine exacerbated plaintiff's heart disease and led to the cardiac episode. Further, even if the officer's actions did not worsen plaintiff's condition, there is a genuine issue of material fact as to whether the delay in treatment caused plaintiff unnecessary pain and suffering. See Williams v. Liefer, 491 F.3d 710, 714-16 (7th Cir. 2007). Plaintiff states that he had chest pain from the time he was arrested until he was treated at the hospital, and plaintiff's cardiologist explains that this pain would likely have been alleviated had plaintiff received nitroglycerine sooner.

Defendants are not entitled to qualified immunity with respect to plaintiff's claim that they failed to provide him with adequate medical care because it has long been clearly established that when a detainee has an objectively serious medical need, an officer may not treat such need with deliberate indifference. Therefore, for the reasons stated, defendants' motion for summary judgment with respect to this claim will be denied.

Next, plaintiff claims that defendants Murray and Garcia violated his due process right to a fair trial by conducting a show-up, the results of which were introduced at plaintiff's trial. However, this claim fails because the officers who conducted the show-up

6

Case 2:05-cv-00785-LA   Filed 07/13/10   Page 6 of 12   Document 144

cannot be held liable for the prosecutor's decision to use the show-up at trial. Wray v. City of New York, 490 F.3d 189,192-95 (2d Cir. 2007). Further, even if Murray and Garcia could be held liable for the use of the show-up, they would be entitled to qualified immunity. As the Second Circuit has noted recently, extending liability for the use of a show-up to the police officers who conducted the show-up would be "unprecedented." Id. at 193. Thus, Murray and Garcia could not have violated any clearly established law.[2]

Next, plaintiff argues that defendant Schimke violated his due process right to a fair trial by failing to preserve the clothes he was wearing when he was arrested. The due process clause of the Fourteenth Amendment requires the government to preserve evidence and disclose it to the defense whenever that evidence "possess[es] an exculpatory value that was apparent before the evidence was destroyed" and is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." California v. Trombetta, 467 U.S. 479, 485 (1984). This duty applies to police officers. Steidl v. Fermon, 494 F.3d 623, 631 (7th Cir. 2007).

In the present case, the exculpatory value of plaintiff's clothes became apparent at the preliminary hearing, when Hardy gave a description of plaintiff's clothes that was inconsistent with the description of plaintiff's clothes in the police report. The preliminary hearing was held on April 9, 2002, and plaintiff's clothes were destroyed by employees of

---

[2] I note that in Dominguez v. Hendley, 545 F.3d 585, 589-90 (7th Cir. 2008), the Seventh Circuit upheld a jury verdict finding an officer liable for causing the use of an unreliable identification at trial, among other wrongs. However, in that case the court found that the officer had misled the prosecutor by not telling him that the identification was procured through the use of a suggestive show-up, and that therefore placing liability on the officer was appropriate. Id. at 590. In the present case, plaintiff does not allege that any defendant misled the prosecutor and caused him to unwittingly introduce unreliable identification evidence at trial.

7

the Milwaukee County Jail on August 10, 2002. Thus, the exculpatory value of the clothes was apparent before the evidence was destroyed. However, by the time of the preliminary hearing, the case was in the prosecutor's hands, and so the duty to preserve the clothing was the prosecutor's. Indeed, plaintiff does not suggest that Schimke was present at the preliminary hearing or otherwise knew that Hardy had testified in a manner that made the exculpatory value of the clothing apparent. For these reasons, Schimke is not liable for the government's failure to preserve plaintiff's clothes.[3]

Plaintiff also claims that defendants Murray, Garcia and Schimke failed to preserve surveillance tapes from a building in the area of the burglary. Plaintiff contends that these tapes might have shown that he was not the person who committed the attempted burglary, and that therefore the police had a duty to obtain the tapes and preserve them. Defendants deny that any surveillance tapes existed, but at his deposition Garcia testified that such tapes did exist, that Hardy had been watching the suspect on the building's

---

[3]To be sure, plaintiff contends that during the initial interrogation (i.e., prior to the preliminary hearing), Schimke asked him questions about the whereabouts of his black hooded sweatshirt, and that plaintiff told him that he did not have such a sweatshirt. Plaintiff argues that, in asking these questions, Schimke exhibited knowledge of the exculpatory value of plaintiff's clothing. However, a jury could not reasonably conclude from this exchange that the exculpatory value of plaintiff's clothing was apparent to Schimke. And even if it could, I cannot say that the exculpatory value was so apparent to Schimke at the time of the interrogation that he either acted incompetently or in knowing violation of the law when he failed to take steps to ensure that the Milwaukee County Jail did not destroy the clothing six months later. Malley v. Briggs, 475 U.S. 335, 341 (1986) (holding that qualified immunity protects all but the plainly incompetent and those who knowingly violate the law).

8

surveillance cameras, and that she informed Garcia, Murray and Schimke of these facts. Thus, there is a genuine issue of material fact concerning the tapes' existence.[4]

Before defendants could be found liable for failing to preserve the tapes, however, plaintiff must show that defendants allowed the tapes to be destroyed in bad faith. This is so because where, as here, the evidence is only <u>potentially</u> exculpatory,[5] the government must have acted in bad faith before the failure to preserve the evidence could amount to a deprivation of due process. <u>Arizona v. Youngblood</u>, 488 U.S. 51, 57-58 (1988); <u>see also</u> <u>United States v. Chaparro-Alcantarra</u>, 226 F.3d 616, 623 (7th Cir. 2000) ("The Supreme Court has explained that there is a difference between those situations in which the police fail to disclose to the defendant evidence that it knows to be material and exculpatory, and those situations in which police simply fail to preserve potentially exculpatory evidence."). However, defendants have not moved for summary judgment on this claim on the ground that no reasonable jury could conclude that defendants acted in bad faith in failing to preserve the tapes. Rather, they ignore the bad-faith element in their briefs and simply rest

---

[4]I reach this conclusion without considering the Affidavit of Judy Ziebell, which plaintiff seeks to add to the summary judgment record as newly discovered evidence. Ziebell is an investigator, hired by plaintiff's criminal defense attorney, who conducted an investigation in 2002 and determined that the building had surveillance cameras but that the tapes had been destroyed before she could obtain them. Because plaintiff did not learn about Ziebell until after the close of discovery, defendants have not taken her deposition. Although I will not consider Ziebell's affidavit in support of the present motion, I will allow defendants to take her deposition so that they will be prepared to address her testimony at trial.

[5]The videotapes are only potentially exculpatory because no one knows what they would have shown. Indeed, the tapes might have confirmed that plaintiff was the burglar.

9

on their contention that no tapes existed.[6] Because defendants do not address the bad-faith element, I view them as conceding that a jury could infer from Garcia's testimony that Murray, Garcia and Schimke knew that the videotapes existed but allowed them to be destroyed in bad faith. Thus, this claim may proceed to trial.

Finally, plaintiff claims that Schimke violated his due-process right to a fair trial by coercing incriminating statements by withholding medical treatment.[7] Plaintiff claims that he made statements prejudicial to himself only because Schimke advised him that he would not receive medical attention for his heart problem until he cooperated. Initially, I note that plaintiff does not argue this claim as a substantive due process claim. That is, plaintiff does not argue that Schimke violated plaintiff's right to be free from coercive interrogation tactics. See, e.g., Buckley v. Fitzsimmons, 20 F.3d 789, 794 (7th Cir. 1994) (stating that act of coercing a statement is a completed constitutional wrong); see also Martinez v. City of Oxnard, 337 F.3d 1091, 1092 (9th Cir. 2003) (holding that freedom from coercive police interrogation is a clearly established right). Instead, plaintiff argues that the use of the coerced statement at his trial deprived him of his procedural due process right to a fair trial. (Reply Br. [Docket #125] at 22.) Thus, I analyze this claim as a procedural due process claim.

---

[6] Defendants also represent that plaintiff does not plead a due process claim based on the surveillance tapes in his complaint, but this representation is untrue. (Am. Compl. ¶¶ 48-49, 51.)

[7] Plaintiff did not plead a coercion claim in his complaint. However, plaintiff raised this claim in his brief in opposition to defendants' motion for summary judgment, and defendants did not object to it on the ground that it was not pleaded.

10

Like the decision to use the show-up at trial, however, the decision to use plaintiff's coerced statement at trial was made by the prosecutor, not Schimke. Further, the Seventh Circuit has held that an investigator who coerces a statement is not liable for a wrongful conviction obtained through the use of the statement at trial. Duncan v. Nelson, 466 F.2d 939, 942-43 (7th Cir. 1972). In any event, plaintiff does not cite, and I have not found, any case finding an investigator liable for depriving a criminal defendant of a fair trial on the ground that the investigator obtained the defendant's statement through coercion. Therefore, even if Schmike's coercion could be found to have deprived plaintiff of a fair trial, Schimke would be entitled to qualified immunity.

## IV. CONCLUSION

For the reasons stated, it is therefore ordered that defendants' motion for summary judgment is **GRANTED-IN-PART** and **DENIED-IN-PART**. Plaintiff's claim against the City is dismissed, as are plaintiff's claims based on the show-up, clothing and coerced statement. Plaintiff's claim that Schminke used excessive force against him, plaintiff's claim that the defendants failed to provide him with proper medical care, and plaintiff's claim based on the destruction of video surveillance tapes remain for trial.

**IT IS FURTHER ORDERED** that plaintiff's motion to strike the testimony of Kerry Klein and Gregory Harley and plaintiff's motion to supplement are **DENIED** as **MOOT**. I did not find it necessary to consult the disputed evidence in connection with the present motion.

11

**FINALLY, IT IS ORDERED** that a telephonic status conference will be held on **July 28, 2010 at 3:30 p.m.** The court will initiate the call.

Dated at Milwaukee, Wisconsin, this 13 day of July, 2010.

/s_____
LYNN ADELMAN
District Judge